**SANDEN, Appellee,**

v.

**CITY OF CINCINNATI, Appellant, et al.**

[Cite as *Sanden v. Cincinnati,* 174 Ohio App.3d 280, 2007-Ohio-6866.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070226.

Decided Dec. 21, 2007.

</div>

George Mueller, for appellee.

Julia L. McNeil, City Solicitor, and Augustine Giglio, Assistant City Solicitor, for appellant.

SUNDERMANN, Judge.

{¶ 1} Defendant-appellant, the city of Cincinnati ("the city"), appeals from the trial court's entry denying its motion for summary judgment and granting summary judgment to its former employee, plaintiff-appellee Ronald Sanden, Jr., on his workers' compensation claim for posttraumatic stress disorder.

{¶ 2} Sanden began employment as a police officer with the city on June 9, 1996. In October 1997, Sanden was finishing his shift when he saw Officers Daniel Pope and Ronald Jeter. Sanden handed them an arrest warrant for a suspect named Davenport, whom he had been unable to locate earlier that day. Sanden told Pope and Jeter that Davenport would likely be at his apartment that night. Sanden then went to the Kroger grocery store in the Correyville section of Cincinnati, where he was working in his off-duty hours.

{¶ 3} Later that night, as Sanden was walking through the breezeway towards the Walgreen's side of the Kroger store, he heard a radio call about an off-duty police officer who was chasing a suspect. Sanden came across the suspect in time to see him commit suicide. Shortly thereafter, Sanden learned that the suspect was Davenport, the man whom he had tried to serve the arrest warrant on earlier that day, and that Davenport had shot and killed Officers Pope and Jeter prior to killing himself.

{¶ 4} In September 2000, Sanden and his partner were responding to an assistance call for Officer Kevin Crayon at the corner of North Bend Road and Colerain Avenue when they were diverted to the residence of a 12–year–old suspect, whom police suspected of harming Officer Crayon. Sanden accompanied

the juvenile suspect, who had suffered a gunshot wound, to Children's Hospital where he later died. While Sanden was en route to the hospital, he learned that Officer Crayon had died as a result of his altercation with the juvenile suspect.

{¶ 5} On October 24, 2001, Sanden resigned from his position with the city. Immediately thereafter, he began employment as a police officer with the city of Norwood. In November 2003, Sanden was diagnosed with posttraumatic stress disorder.

{¶ 6} On December 9, 2004, Sanden filed an application for workers' compensation benefits for posttraumatic stress disorder as a result of his involvement in the events surrounding the 1997 deaths of Officers Pope and Jeter and the 2000 death of Officer Crayon. A district hearing officer allowed Sanden's claim on the basis of the Ohio Supreme Court's decision in *Bailey v. Republic Engineered Steels, Inc.*[1] The allowance of the claim, however, was vacated by a staff hearing officer, who determined that Sanden's claim was not compensable under *Bailey* because he had not been on duty at the time of Pope and Jeter's deaths and because he had not witnessed any of the injuries to Officers Pope, Jeter, and Crayon. The Industrial Commission refused further review.

{¶ 7} On November 4, 2005, Sanden appealed to the Hamilton County Court of Common Pleas pursuant to R.C. 4123.512. Shortly thereafter, both the city and Sanden moved for summary judgment. The sole issue before the trial court was whether Sanden's job-related psychological injuries were compensable under the workers' compensation system. The trial court overruled the city's motion for summary judgment and granted Sanden's motion without an opinion or explanation. This appeal followed.

{¶ 8} In its sole assignment of error, the city argues that the trial court erred in overruling its motion for summary judgment and in granting Sanden's motion.

{¶ 9} When reviewing the grant or denial of a motion for summary judgment, this court employs the same standard used by the trial court. That is, we independently review the record to determine whether summary judgment was appropriate.[2] Under Civ.R. 56(C), summary judgment is proper when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party."[3]

---

1. (2001), 91 Ohio St.3d 38, 741 N.E.2d 121.

2. See *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265.

3. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 10} Sanden's workers' compensation claim for posttraumatic stress disorder was based solely on the analysis employed by the Ohio Supreme Court in *Bailey*. In *Bailey*, the court interpreted R.C. 4123.01(C) to allow coverage under the workers' compensation statutes to an employee suffering from a psychiatric condition as a result of an injury to a co-worker.[4] In that case, Bailey had been operating a tow motor when he accidentally ran over a co-worker and killed him.[5] Bailey suffered no physical injuries from the incident, but he did suffer from severe depression.[6] Bailey subsequently filed a workers' compensation claim for depression, which was denied administratively.[7]

{¶ 11} The Ohio Supreme Court, however, held that Bailey was entitled to workers' compensation coverage, despite his lack of physical injury.[8] The court interpreted R.C. 4123.01 as requiring only that a compensable injury occur.[9] The court then reasoned that because the statute failed to specify who must be injured, a co-worker's injury could serve as a compensable injury under the statute.[10] Thus, the court stated that "where an employee witnesses or accidentally causes a coworker's injury and develops a psychiatric condition as a result, the injury is sustained within the scope of employment."[11] As a result, the court held that Bailey's purely psychological injury, which had resulted from his co-worker's compensable injury, was also compensable.[12]

{¶ 12} In its first issue for review, the city argues that it was entitled to summary judgment on Sanden's claim because the current version of R.C. 4123.01(C)(1) expressly provides that to qualify as a compensable injury (1) an employee's psychiatric condition must involve a contemporaneous physical injury or occupational disease or (2) it must have arisen from "sexual conduct in which the [employee] was forced by threat of physical harm to engage or participate."

---

4. *Bailey*, supra, at paragraph one of the syllabus.

5. Id. at 38, 741 N.E.2d 121.

6. Id.

7. Id.

8. Id. at 42, 741 N.E.2d 121.

9. Id. at 40–41, 741 N.E.2d 121.

10. Id.

11. Id. at 42, 741 N.E.2d 121.

12. Id.

{¶ 13} While we agree that Sanden's psychiatric condition would no longer qualify as a compensable injury under the current version of R.C. 4123.01(C)(1) absent a contemporaneous physical injury, this version of the statute did not become effective until June 30, 2006, almost three years after Sanden was diagnosed with posttraumatic stress disorder and two years after he had applied for workers' compensation benefits. Because the General Assembly did not intend for the current version of the statute to apply retroactively, we must agree with Sanden that the current statute did not bar his claim.[13] Consequently, the city was not entitled to summary judgment on this basis.

{¶ 14} The city next argues that it was entitled to summary judgment because Sanden's claim was factually distinguishable from the employee's claim in *Bailey*, given that Sanden neither caused nor witnessed the deaths of Officers Pope, Jeter, and Crayon. The city further argues that while the Ohio Supreme Court has not expressly overruled its prior decision in *Bailey*, it has openly questioned *Bailey's* interpretation of R.C. 4123.01(C). Thus, the city argues that it is now questionable whether *Bailey* is still good law.

{¶ 15} In *McCrone v. Bank One Corp.*, the Ohio Supreme Court addressed a bank teller's claim for workers' compensation benefits for a purely psychological injury, posttraumatic stress disorder, following two separate bank robberies.[14] The court held that "psychological or psychiatric conditions that do not arise from a compensable physical injury or occupational disease are excluded from the definition of 'injury' under R.C. 4123.01(C)(1) and from workers' compensation coverage," [15] and that R.C. 4123.01(C)(1) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions.[16]

{¶ 16} In its analysis, the court criticized its earlier decision in *Bailey*, characterizing its interpretation of R.C. 4123.01(C) as "atypical." [17] The *McCrone* court stated that "[w]hen the entire definition of 'injury' in R.C. 4123.01(C) is examined, it is clear that workers' compensation covers physical injuries and psychiatric injuries that arise directly out of physical injuries or occupational disease *to the claimant*." [18] Thus, the court stated that *Bailey*, by allowing

---

13. See Section 3, S.B. No. 7 (2005); see also *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraphs one, two, and three of the syllabus.

14. 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1.

15. Id. at paragraph one of the syllabus.

16. Id. at paragraph two of the syllabus.

17. Id. at ¶ 22.

18. Id. at ¶ 23.

workers' compensation for a mental condition arising from a third party's injury, had "created an aberration."[19] The *McCrone* court, however, did not explicitly overrule *Bailey*, concluding instead that even if *Bailey* were applicable to McCrone's claim, a physical injury (albeit to a third party) would still have been required before McCrone's psychiatric injury would have been compensable.[20]

{¶ 17} We agree with the city that it is questionable whether *Bailey* is still good law after the decision in *McCrone*. But even if we were to apply the *Bailey* court's interpretation of R.C. 4123.01(C), as Sanden urges, the city would still be entitled to summary judgment on his workers' compensation claim for posttraumatic stress disorder. Sanden, unlike the employee in *Bailey*, neither witnessed nor caused the deaths of Officers Pope, Jeter, and Crayon. We, therefore, sustain the city's sole assignment of error, reverse the judgment of the court below, and enter final judgment for the city.

Judgment accordingly.

CUNNINGHAM, J., concurs.

HILDEBRANDT, P.J., dissents.

HILDEBRANDT, Presiding Judge, dissenting.

{¶ 18} Because I believe that Officer Sanden's injury was compensable under the authority of *Bailey*, I respectfully dissent.

{¶ 19} Although the *McCrone* court indicated that *Bailey's* holding was an aberration, it did not overrule *Bailey*. Thus, at the time Officer Sanden filed his worker's compensation claim, the law in Ohio was that "a psychiatric condition of an employee arising from a compensable injury or an occupational disease suffered by a third party is compensable under R.C. 4123.01(C)(1)." Under that law, Officer's Sanden's claim was compensable because he met all the "elements." First, it is undisputed that Sanden suffered a psychological injury—posttraumatic stress disorder ("PTSD"). Second, Officers Pope, Jeter, and Crayon all suffered work-related injuries—death. And, third, the parties agreed that Sanden's PTSD was a result of the work-related injuries suffered by the officers.

{¶ 20} But a staff hearing, under the alleged authority of *Bailey*, denied Officer Sanden's claim because he had not witnessed the officers' deaths. But I do not think that *Bailey* requires us to bar Officer Sanden's recovery in this case unless he saw Davenport shoot Officers Pope and Jeter, and saw the juvenile suspect, who had been driving a car, drag Officer Crayon to his death. Instead, I believe

---

**19.** Id. at ¶ 28.

**20.** Id.

that *Bailey* authorizes recovery for a psychological injury that is *sufficiently connected* to the third party's work-related injury. This interpretation is more in line with the holding in *Bailey*, which took into consideration that courts, under R.C. 4123.95, are directed to liberally construe workers' compensation laws in favor of employees and concluded that the "legislature's intent [under the laws of workers' compensation] was to allow compensation in cases where an employee suffers a mental injury caused by a coworker's physical injury."[21]

{¶ 21} Accordingly, I would hold that Officer Sanden's claim was compensable because his injury—PTSD—was sufficiently connected with Officers Pope, Jeter, and Crayon's work-related injuries. Although Officer Sanden certainly did not cause the deaths of Officers Pope and Jeter, it is apparent from the record that he felt somehow responsible for them. He testified in his deposition that this was the first time that he had directly handed another officer an arrest warrant that he had not been able to serve. (Apparently, an officer would return an arrest warrant that he was unable to serve during a shift, to a "bin" for the next officers on shift.) And then only hours later, in a tragic twist of fate, Officer Sanden saw Davenport commit suicide, after he had just shot and killed Officers Pope and Jeter as they were trying to serve him with the arrest warrant. Although police officers, as part of their employment, inevitably witness tragic events, I think it is safe to say that the particular circumstances here did not amount to a normal occurrence for a police officer.

{¶ 22} Then, three years later, Officer Sanden had to escort a juvenile suspect to the hospital after the suspect had been involved in the death of Officer Crayon. During the ride to the hospital, Officer Sanden learned that Crayon had died and later that night, the juvenile suspect died. Ironically, this situation is similar to the facts involving the deaths of Pope and Jeter: Officer Sanden was with the suspect who had killed the other officer, and then the suspect died. The only difference in this instance was that Officer Sanden did not have any physical interaction with Officer Crayon prior to his death. But he had been the first officer to respond to Officer Crayon's dispatch for help.

{¶ 23} Based on the foregoing circumstances, I would hold that Officer Sanden's psychological injury, which indisputably arose from the work-related injuries of three officers, was compensable under Ohio's worker's compensation system. Accordingly, I would affirm the judgment of the trial court.

---

21. See *Bailey*, supra, 91 Ohio St.3d at 41, 741 N.E.2d 121.